UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUPERIOR CONTRACTING
GROUP, INC.,

    Plaintiff,

v.

AVINASH RACHMALE,

    Defendant.

_____/

Civil Action No. 15-11381

HONORABLE DENISE PAGE HOOD

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS,
ORDER TRANSFERRING ACTION,
AND
ORDER DESIGNATING ACTION CLOSED ON DOCKET**

**I.   BACKGROUND/FACTS**

On August 22, 2014, Plaintiff Superior Contracting Group, Inc. originally filed the instant suit against Defendant Avinash N. Rachmale before the United States District Court for the Western District of Tennessee. (Doc. No. 4, W.D. Tenn. Docket) On December 31, 2014, the Honorable Samuel H. Mays, Jr. entered an order granting Rachmale's Motion to Dismiss based on improper venue and transferring the action to this District. (Doc. No. 2, Order) The action was transferred by the Western District of Tennessee Clerk to this District on April 16, 2015.

Superior Contracting is a licensed general contractor located in Memphis,

Tennessee. (Doc. No. 1, Comp., ¶ 1) Rachmale, an individual, is a citizen of the State of Michigan, and is either the sole or majority shareholder of Lakeshore Engineering Services, Inc., a non-party in this action. *Id.*, ¶¶ 2, 5. On May 14, 2009, Superior Contracting and Lakeshore, at the direction of Rachmale, entered into a Mentor/Protégée Agreement, a program established by the United States Small Business Administration, to pursue work allocated for Section 8(a) contractors by the United States. *Id.*, ¶¶ 4, 6. Superior Contracting and Lakeshore, at the direction of Rachmale, entered into two joint venture entities, the Superior Contracting/Lakeshore JV, LLC and Superior Contracting/Lakeshore JV2, LLC, to pursue construction projects by the United States Army Corps of Engineers, St. Louis District. *Id.,* ¶ 7. Five Joint Venture Agreements were entered into between Superior Contracting and Lakeshore, at the direction of Rachmale, for five projects constructed by the Corps of Engineers: Keyesport, Gravity Drain Phase 1; Gravity Drain-Phase 2; Chesterfield Levee; Chesterfield Railroad Closure; and, Len Small. *Id.*, ¶ 8. All works on all the projects were completed by April 29, 2013 and the Corps of Engineers had made final payment. *Id.*, ¶ 10.

     Pursuant to the terms of the Joint Venture Agreements, Superior Contracting was to receive 51% of the net profits and Lakeshore 49% of the net profits. *Id.*, ¶ 11. Overall management and construction of the projects was to be conducted by

Superior Contracting, all books and records was to be maintained by Superior Contracting, and the funds were to be maintained in a joint account controlled by both Superior Contracting and Lakeshore. *Id.*, ¶ 12.

After the projects were completed, Superior Contracting discovered that Lakeshore, at the direction of Rachmale, had deposited payments received from the Corps of Engineers into a joint bank account of the Joint Venture, but Superior Contracting had no signatory authority on the account. *Id.*, ¶ 13. Lakeshore, at the direction of Rachmale, later withdrew the funds in the Joint Venture bank account and deposited the funds into another bank account which was under the exclusive custody and control of Lakeshore. *Id.* Superior Contracting asserts that Lakeshore, at the direction of Rachmale, had paid itself funds from the projects exceeding the 49% net profits to which Lakeshore was entitled under the terms of the Joint Venture Agreements. *Id.* Superior Contracting further asserts that Lakeshore charged expenses to the Joint Venture that were not associated with the construction of the Joint Venture Projects. *Id.* Superior Contracting demanded Lakeshore to produce all original Project records and other financial records pertaining to the Projects, but the demand was refused. *Id.*, ¶ 14.

On August 23, 2013, Superior Contracting commenced an action against Lakeshore for breach of contract/accounting in the Chancery Court of Shelby County,

Tennessee. *Id.*, ¶ 14. On May 2, 2014, Lakeshore filed a chapter 7 petition in the United States Bankruptcy Court for the District of Delaware, imposing an automatic stay of Superior Contracting's action against Lakeshore pending the bankruptcy proceeding. *Id.*, ¶ 23.

The instant action was thereafter filed in August 2014, as noted above, against the individual Rachmale alleging: Conversion, Fraud, and Intentional Misrepresentation (Count I); Piercing the Corporate Veil (Count II); and, Punitive Damages (Count III). District Judge May ordered the action transferred to this District finding this District as the proper venue for the action. (Doc. No. 2, Order)

This matter is now before the Court on Rachmale's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3), (6) and (7). A response and reply have been filed.

## II.   ANALYSIS

### A.   Rule 12(b)(3) Motion to Dismiss for Improper Venue

Even though Rachmale first addresses the Motion to Dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court will first address the Motion to Dismiss for Improper Venue under Rule 12(b)(3). District courts should resolve issues related to jurisdiction or venue prior to ruling on a motion to dismiss for failure to state a claim. *See Reilly v. Meffe,* 6 F. Supp. 3d 760, 764 (S.D. Ohio 2014) (citing, *Arrowsmith v. United Press Int'l*, 320 F.3d 219, 221

(2d Cir. 1963)). District Judge May's Order transferring this matter to this District does not address the issue of whether the bankruptcy court in the District of Delaware was the proper venue for this action or whether that issue was raised by the parties.

Rachmale argues that the proper venue for this action is the District Court where the bankruptcy action is pending, which is the District Court of Delaware. Superior Contracting responds that the Bankruptcy Court for the District of Delaware has simply no jurisdiction over this case since Rachmale, himself, is not the subject of the bankruptcy proceeding in that court.

Section 1334 grants jurisdiction to district courts in bankruptcy cases and proceedings and grants the district court original jurisdiction of all cases under title 11. 28 U.S.C. § 1334(a). The district courts also have original, but not exclusive jurisdiction, of all proceedings arising under title 11, or arising in or "related to cases under title 11." 28 U.S.C. § 1334(b). "Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir. 1986). The Sixth Circuit Court of Appeals follows the test for determining "related to" jurisdiction enunciated in *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984 (3d Cir. 1984)–"whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See, In re Wolverine Radio Co.,* 930 F.2d 1132, 1142 (6th Cir. 1991). "An action is related

to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* Under the "conceivable effect test," the claims are related to the bankruptcy proceeding because, if they had been brought during the proceeding, any recovery received would have represented an asset available for distribution to the debtor's creditors. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002).

Suits between third parties which have an effect on the bankruptcy estate are "related to" a bankruptcy proceeding. *Celotex Corp. v. Edwards,* 514 U.S. 300, 307-08 (1995). Section 1334(b) "does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding." *In re Salem,* 783 F.2d at 635. When a plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334. *In re Dow Corning Corp.,* 86 F.3d 482, 492 (6th Cir. 1996)(citations omitted). The degree of identity between a debtor and nondebtor codefendant is an important factor. *Id.* at 492-93.

Venue of proceedings related to bankruptcy cases filed under title 11, "may be commenced in the district court in which such [the bankruptcy case] is pending." 28 U.S.C. § 1409. Under 28 U.S.C. § 1412, a district court may transfer a case or

proceeding under title 11 to another district court, in the interest of justice or for the convenience of the parties. *In re Manville Forest Prod. Corp.,* 896 F.2d 1384, 1390 (2d Cir. 1990). The party moving for change of venue bears the burden of proof and that the burden must be carried by a preponderance of the evidence. *Id.* at 1390-91. The district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy. *Id.* at 1391. The decision to transfer a case or proceeding lies within the sound discretion of the court requested to effect the transfer. *Matter of GEX Kentucky, Inc.,* 85 B.R. 431, 435 (Bankr. N.D. Ohio 1987). The most important consideration is whether the transfer would promote the "economic and efficient administration of the estate." *Id.*

In a bankruptcy action, 28 U.S.C. § 157(b)(5) provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending.*" 28 U.S.C. § 157(b)(5) (italics added).

Superior Contracting admits in its response brief that the Court is required "to consider the Joint Venture Agreements between Superior and Lakeshore" in reviewing the tort claims against Rachmale. (Doc. No. 9, Resp., Pg ID 222) The factual allegations in the Complaint against Rachmale expressly refer to the various

7

agreements between Superior Contracting and Lakeshore. As admitted by Superior Contracting, in order to determine whether Superior Contracting has stated claims upon which relief may be granted as to Rachmale, the various agreements entered into between Superior Contracting and Lakeshore must be reviewed in order to determine whether Rachmale's actions were outside the agreements. The Court's review of the allegations in the Complaint finds that the claims against Rachmale are "related to" the bankruptcy case against Superior Contracting. The outcome of this proceeding "could conceivably" have an effect of the Lakeshore Bankruptcy Estate, since the claims in this case allege damages which were wrongfully obtained by Rachmale from the Superior Contracting and Lakeshore Joint Ventures. It is clear from the Court's reading of the Complaint that Plaintiff is asserting a "joint conduct" between Lakeshore, the debtor in the bankruptcy action in Delaware, and the non-debtor Defendant Rachmale in this action. Throughout the Complaint as noted above, Superior Contracting asserts that "at the direction of Rachmale," Superior Contracting and Lakeshore entered into various joint venture agreements. Superior Contracting in fact first filed an action against Lakeshore before filing the instant action against the individual Rachmale. The Delaware Bankruptcy Court has jurisdiction over all the "joint conduct" claims against Rachmale. *In re Dow Corning,* 86 F.3d at 492. The debtor Lakeshore and the non-debtor Rachmale are one and the same, as alleged

by Superior Contracting in this Complaint, and as asserted in Superior Contracting's claim to pierce the corporate veil of Lakeshore to reach Rachmale. (Doc. No. 1, Comp., ¶¶ 5 & Count II, Piercing the Corporate Veil)

In addition, Rachmale asserts that he has an indemnification agreement with Lakeshore Toltest, the parent corporation to Lakeshore. Superior Contracting argues that the claim for indemnification has nothing to do with the adjudication of the claims between Superior Contracting and Rachmale. The Sixth Circuit in *Dow Corning* found that claims for indemnification and contribution would affect the size of the estate, concluding that the bankruptcy court had jurisdiction over such claims which could potentially affect the ability of the debtor's ability to resolve its liabilities. *Dow Corning,* 86 F.3d at 494. The parent corporations of Dow Corning, in addition to other nondebtor manufacturer defendants, had asserted contribution and indemnification claims against the debtor Dow Corning, which the Sixth Circuit found were related to the Dow Corning bankruptcy action. *Id.*

Based on the above, the Court finds that the claims in this action are clearly related to the debtor Lakeshore's bankruptcy proceedings before the District of Delaware. The Court finds that under the venue statute, 28 U.S.C. § 1409, venue is proper in the United States District Court for the District of Delaware and will so transfer the instant case to that District under 28 U.S.C. § 1412. The District of

Delaware court will then refer the matter to the appropriate bankruptcy court, if it so finds appropriate.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss **(Doc. No. 5)** is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Clerk TRANSFER this action to the United States District Court for the District of Delaware.

IT IS FURTHER ORDERED that this matter is designated as CLOSED on the Court's docket.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United State District Court

Dated: March 30, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager